# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BENJAMIN A. DAVIDSON, | : | CASE NO. |
| Plaintiff, | : | 3:21-cv-63 (JCH) |
| | : | |
| v. | : | |
| BRENT FITZGERALD, et al., | : | |
| Defendants. | : | |
| | : | DECEMBER 28, 2021 |
| | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS (Doc. No. 26)

The plaintiff, Benjamin A. Davidson ("Davidson"), formerly incarcerated, has filed this civil rights action pro se to challenge the conditions of his incarceration. Davidson names fifteen defendants: Lieutenant Brent Fitzgerald, Warden Stephen Faucher, Deputy Warden Ronald Cotta, Deputy Warden Sharonda Carlos, Captain James Korch, Warden Robert Martin, Counselor Supervisor Justin Oles, Captain James Shabenas, Acting District Administrator Nick Rodriguez, Counselor Supervisor Michelle King, Counselor Supervisor Katherine Iozzia, District Administrator Angel Quiros, Deputy Commissioner Monica Rinaldi, District Administrator Edward Maldonado, and Commissioner Rollin Cook. Davidson's Amended Complaint consists of a detailed factual recitation, a general statement that his constitutional rights have been violated, and a request for relief. See Am. Compl. (Doc. No. 10). Defendants Cotta, King, Martin, and Oles[1] have filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the following reasons, the defendants' Motion is granted.

---

[1] These are the only defendants who had been served at the time the Motion to Dismiss was filed. Shortly afterwards, Davidson filed returns of service for Brent Fitzgerald and Katherine Iozzia.

However, because the Motion did not address plaintiff's retaliation claim, that claim will proceed against defendants Cotta, King, Martin, Oles, Fitzgerald, and Iozzia.

I. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is proper where "the district court lacks the statutory or constitutional power to adjudicate" the case. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The court may consider evidence outside the pleadings when deciding whether subject matter jurisdiction exists. Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 218 (2d Cir. 2014) (quoting Twombly, 550 U.S. at 555).  However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

When determining the sufficiency of a complaint the district court is limited "'to the factual allegations in [the] … complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'"  Roth v. CitiMortgage Inc., 756 F.3d 178, 180 (2d Cir. 2014) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

II.   ALLEGED FACTS[2]

While he was incarcerated, Davidson took correspondence courses at Adams State University in Colorado.  Am. Compl. at 5.  The counselor, counselor supervisor, deputy warden, and warden denied Davidson permission to receive used textbooks.  Id.  However, the school counselor agreed to have the used textbooks sent to him.  Id.

---

[2] Throughout the statement of facts in his Complaint, Davidson refers to events that appear to have happened contemporaneously as happening a year apart, and also appears to misstate dates.  For example, on page 6, Davidson refers to the creation of five work reports on March 27, 2018, and alleges that on March 17, 2018, he requested preservation of video surveillance footage showing that he signed the reports on March 27, 2019.  Although inherently illogical, the court recites the dates from the Amended Complaint.

Davidson used this procedure with the counselor until the counselor's retirement and then with the school principal until her retirement. Id.

After the school principal retired, Davidson's aunt contacted Deputy Warden Carlos who agreed to accept the used textbooks on Davidson's behalf. Id. However, when the next shipment of books arrived, she refused them and, in a phone conversation with Davidson's aunt, denied agreeing to permit Davidson to have used textbooks. Id. Soon thereafter, Deputy Warden Carlos told Captain Korch that Davidson's aunt had called to complain about the books. Id.

Counselor Derby told Davidson that Captain Korch instructed Lieutenant Fitzgerald to fire Davidson from his prison job for having a relative call and complain. Id. Lieutenant Fitzgerald issued Davidson an allegedly unwarranted poor work report to justify terminating his job. Id. Davidson asked his attorney to contact the Commissioner about his job. Id. When Deputy Commissioner Rinaldi questioned Deputy Warden Carlos, the deputy warden denied that Davidson had been fired. Id. Over the next eighteen months, Davidson filed numerous requests to address the alleged falsification of documents. Id.

At noon on January 19, 2018, Lieutenant Fitzgerald told Davidson that Deputy Warden Carlos had ordered him to fire Davidson and handed him a poor work report dated that day. Id. at 6. On January 20, 2019, Davidson requested a copy of the work report. Id. The copy he received on January 26, 2019, was dated January 9, 2018. Id.

On February 13, 2018, Davidson wrote to the counselor seeking Risk Reduction Earned Credit ("RREC"). Id. He was told that he was ineligible for RREC because he

4

had been fired from his job. Id. The following day, he asked the counselor to state why he was fired and was told that he had been reclassified, not fired. Id. A year later, Lieutenant Fitzgerald failed to respond to a request for clarification of this matter and refused to respond to any requests that would conflict with him firing Davidson from his job. Id.

In March 2018, Davidson filed a grievance after the counselor failed to respond to his claim that he never received semi-annual work reports. Id. In response to the grievance, Counselor King asked Correctional Officer Ayala to recreate the work reports. Id. Davidson signed all five reports, but two of them, one dated January 19, 2018, and another regarding a hallway job, disappeared. Id. Davidson believes that Lieutenant Fitzgerald destroyed them because they conflicted with his January 2018 poor performance evaluation. Id. Davidson's March 17, 2018 request for preservation of video surveillance footage showing him signing all five reports on March 27, 2019, was denied. Id.

In March and April 2018, Davidson submitted requests and grievances to get the poor work report expunged from his record. Id. at 7. He also sought assistance from Warden Faucher regarding the lack of staff response. Id. In March 2018, Lieutenant Fitzgerald told Davidson that he had been reclassified. Id.

On March 30, 2018, Davidson requested copies of the five work reports but was told that they were not in his master file. Id. When he redirected his request to Counselor Supervisor King, he received only three reports. Id. In April 2018, Counselor Supervisor Iozzia told Davidson that the January 19, 2018 work report was not in his

5

file.  Id.  Davidson confirmed this by reviewing his master file in May 2018.  Id.  Davidson filed many requests regarding the missing work report but received no responses.  Id. at 7-11.

On June 14, 2018, Warden Martin told Davidson that he was aware that Davidson had been moved to Brooklyn Correctional Institution to be near his family but said Davidson would be transferred to Garner Correctional Institution if he continued to submit complaints against correctional staff.  Id. at 10.

III.    DISCUSSION

The defendants move to dismiss this action on six grounds:  (1) Davidson fails to state any claim upon which relief may be granted because his claims are based on the alleged failure to follow administrative directives, (2) Davidson does not have a constitutional right to receive used books, (3) Davidson does not have a constitutional right to an investigation or response to his grievances, (4) the defendants are statutorily immune from all negligence claims, (5) the defendants are protected by qualified immunity on any claims against them in their individual capacities, and (6) Davidson's official capacity claims seeking injunctive relief are moot or seek relief from persons unable to provide such relief.  See Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5-20 ("Defs.' Mem.") (Doc. No. 26-1).  In response, Davidson argues that the defendants violated his Eighth Amendment rights by falsifying documents to retaliate against him and later destroying the documents. See Mot. to Deny Defs.' Mot. to Dismiss ("Pl.'s Mem.") (Doc. No. 29).

A. Service on Defendants

As an initial matter, the court notes that, on June 23, 2021, it issued an Order to Show Cause advising Davidson that if he failed to file returns of service for all defendants by July 14, 2021, the case would be dismissed for failure to prosecute and failure to serve.[3] See Order to Show Cause (Doc. No. 16). Davidson did not respond to the Order but did file one return of service by the specified date. Since then, he has filed returns of service for five other defendants, the last of which were filed on September 7, 2021. Davidson has not otherwise communicated with the court regarding service.

Federal Rule of Civil Procedure 4(m) provides that the court must dismiss the action without prejudice against any defendant who is not served within ninety days after the complaint is filed, or within a time specified by the court. See Fed. R. Civ. P. 4(m). Accordingly, in accordance with the June 23, 2021 Order that provided notice to the plaintiff, all claims against defendants Faucher, Carlos, Korch, Shabenas, Rodriguez, Quiros, Rinaldi, Maldonado, and Cook are dismissed without prejudice for failure to prosecute and for failure of service.

B. Failure to Comply with Administrative Directives

Most of Davidson's claims focus on the alleged failure to comply with Administrative Directives. "However, the defendants' failure to comply with prison

---

[3] The court also notes that, after Davidson initially filed his Complaint on January 15, 2021, it issued an Order a week later directing him to file a legible copy of his Complaint. See Order (Doc. No. 8). Davidson did not respond to that Order and, on April 23, 2021, the court issued an Order to Show Case advising him that his case would be dismissed if he did not file a legible Complaint by May 7. See Order to Show Cause (Doc. No. 9). Davidson filed his Complaint on May 4, 2021, but as discussed above did not file any returns of service prior to the court's June 23, 2021 Order to Show Cause.

7

regulations or administrative directives does not constitute a basis for relief under Section 1983 because 'a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.'" Shahid v. Doe, No. 3:21-CV-849, 2021 WL 3569112, at *3 (D. Conn. Aug. 11, 2021) (quoting Fine v. UConn Med., No. 3:18-CV-530, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted)); see also Shakur v. McNeil, No. 3:20-cv-708(VAB), 2020 WL4818906, at *10 (D. Conn. Aug. 17, 2020) (same).

In opposition to the Motion to Dismiss, Davidson focuses on the requirement that the facts be construed in his favor and argues that he need state only a plausible claim for relief. He does not address the defendants' argument that, even if the allegations are assumed to be true, there is no legal basis for a section 1983 claim. The defendants' Motion to Dismiss is therefore granted as to all claims for failure to follow administrative directives. See, e.g., Harris v. Taylor, 441 F. App'x 774, 775 (2d Cir. 2011) ("failure to comply with a[n] . . . administrative directive does not by itself establish a violation of § 1983").

### C. Right to Receive Used Textbooks

The incident underlying this action was Deputy Warden Carlos' refusal to permit Davidson to receive used textbooks. It does not appear that Davidson is challenging the refusal in this action. To the extent that he is, however, the claim fails.

Deputy Warden Carlos' refusal did not violate any constitutional right. The Connecticut Department of Correction, like many other departments of correction, has a directive prohibiting receipt of hardcover books unless those books are mailed to

inmates from a publisher, book club, or bookstore.  See Administrative Directive 10.7(4)(N),[4] available at https://portal.ct.gov/DOC/AD/AD-Chapter-10.  This restriction has been upheld by the Supreme Court.  "We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates."  Bell v. Wolfish, 441 U.S. 520, 550 (1979).  Thus, Davidson had no constitutional right to receive used textbooks from other sources.  The Motion to Dismiss is therefore granted as to any claim regarding the receipt of used textbooks.

    D.  Failure to Investigate and Respond to Grievances and Requests

Davidson alleges that the defendants failed to investigate his claims of improper conduct and did not respond to his grievances and requests.  Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly.  See Riddick v. Semple, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confuse[d] a state-created procedural entitlement with a constitutional right," and "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'") (quoting Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003)).

Further, Davidson has no constitutional right to have his claims of improper conduct investigated.  See Davis v. Rinaldi, No. 3:19-CV-504, 2019 WL 7879729, at *7 (D. Conn. Oct. 31, 2019) ("[p]laintiff does not have a protected liberty interest in having

---

[4] The court may take judicial notice of the Administrative Directives available on the Department of Correction website.  See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); Christman v. Skinner, 468 F.2d 723, 726 (2d Cir. 1972).

correctional officials investigate his complaints, through the grievance process or otherwise."); see also Davila v. Messier, No. 3:13-CV-81, 2014 WL 4638854, at *8 (D. Conn. Sept. 17, 2014) ("[the inmate] does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate."); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) ("prisoners do not have a due process right to a thorough investigation of grievances").  The defendants' Motion to Dismiss is therefore granted as to any claims regarding the investigation and processing of his grievances.

    E. Retaliation

In his Memorandum, Davidson clarifies his claim, stating that the Department of Correction falsified documents to retaliate against him.  Pl.'s Mem. at 2.  A prisoner who has alleged that corrections officers retaliated against him for filing grievances and complaints about their behavior has engaged in protected speech or conduct for the purposes of asserting a First Amendment retaliation claim.  See, e.g., Gill v. Pidlypchak, 389 F.3d 379 (2d Cir. 2004).  Although a retaliatory motive can be inferred from the allegations in Davidson's Amended Complaint, the defendants have not addressed the retaliatory component of his claims in their Motion.  Thus, the retaliation claim remains pending.

    F. Official Capacity Claims

Davidson asserts claims against the defendants in their official capacities seeking injunctive relief.  He seeks discipline for staff members and "rules put in place to prevent future inmates from being treated in such the manner than I was."  Am.

Compl. at 11. The requests for injunctive relief relate to Davidson's period of incarceration. However, he is no longer incarcerated and was not incarcerated when he filed this action.

Parties in federal court "may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. Although the statute gives Davidson the right to pursue his own claims, it does not permit him to represent anyone else. <u>Berrios v. New York City Hous. Auth.</u>, 564 F.3d 130, 132 (2d Cir. 2009). Davidson's claim for injunctive relief is intended to benefit other inmates, not himself. Thus, as a <u>pro se</u> litigant, he cannot assert that claim. The request for injunctive relief is dismissed.

Davidson also seeks permission to petition for termination of his parole period. The defendants state that, as Department of Correction employees, they have no authority to terminate parole. That power rests with the Board of Pardons and Paroles. <u>See</u> Conn. Gen. Stat. §§ 54-124a(f)(5)-(6), 54-129. As the defendants cannot terminate Davidson's period of parole, leave to petition them to do so would be futile. This request is dismissed.

G.  <u>Negligence</u>

Finally, Davidson alleges that the defendants neglected to perform their duties. The defendants argue that, if Davidson is attempting to assert a state law negligence claim, they are statutorily immune from the claim. Connecticut General Statutes § 4-165 provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." As all defendants were working as

11

correctional employees, they are statutorily immune from any claim for damages based on negligence. The defendants' Motion to Dismiss is granted on any negligence claims.

IV.     CONCLUSION

All claims against defendants Faucher, Carlos, Korch, Shabenas, Rodriguez, Quiros, Rinaldi, Maldonado, and Cook are DISMISSED for failure to prosecute and for failure of service.

The defendants' Motion to Dismiss (Doc. No. 26) is GRANTED as to all claims it addresses, including: 1) all parallel claims for failure to follow administrative directives, 2) all claims to receive used textbooks, 3) all claims to have grievances investigated or responded to, 4) all claims seeking official capacity requests for injunctive relief, and; 5) all state law claims for negligence. Although the Motion was filed only by defendants King, Martin, Oles, and Cotta, the analysis applies to these claims to the extent they are asserted against all defendants. Accordingly, the Motion is granted as to the claims it addresses that have been pled as to defendants Fitzgerald and Iozzia as well.

The defendants have not addressed Davidson's claim for retaliation. The case will proceed on that claim against defendants King, Martin, Oles, Cotta, Fitzgerald, and Iozzia.

All discovery shall be completed on or before March 15, 2022, and any dispositive motion shall be filed on or before April 15, 2022.

SO ORDERED.

Dated this 28th day of December 2021 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge